**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>JUAN PABLO PRICE,<br>*Defendant-Appellant.* | No. 15-50556<br><br>D.C. No.<br>2:15-cr-00061-<br>GHK-1<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted November 6, 2017
Submission Vacated May 18, 2018
Resubmitted April 12, 2019
Pasadena, California

Filed April 12, 2019

Before: Ronald Lee Gilman,[*] Kim McLane Wardlaw,
and Jacqueline H. Nguyen[**], Circuit Judges.

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge
for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This case was submitted to a panel that included Judge Stephen
R. Reinhardt. Following Judge Reinhardt's death, Judge Nguyen was
drawn by lot to replace him. Ninth Circuit General Order 3.2.h. Judge

Opinion by Judge Wardlaw;
Concurrence by Judge Gilman

**SUMMARY**[***]

### Criminal Law

The panel affirmed a conviction for knowingly engaging in sexual contact with another person without that other person's permission on an international flight, in violation of 18 U.S.C. § 2244(b).

The panel rejected the defendant's contention that the government was required to prove beyond a reasonable doubt that he subjectively knew that his victim did not consent, and held that the district court did not err in denying the defendant's request to instruct the jury accordingly. The panel held that in addition to proving beyond a reasonable doubt that the defendant knowingly had sexual contact with the victim, the government need only prove that the victim did not consent as an objective matter.

The panel held that the police had probable cause to arrest the defendant, that he was properly Mirandized, and that the district court acted within its discretion in refusing to read back to the jury portions of the victim's testimony.

---

Nguyen has read the briefs, reviewed the record, and listened to oral argument.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Concurring that the conviction should be affirmed, Sixth Circuit Judge Gilman disagreed with the majority's holding that "knowingly" in § 2244(b) does not extend to the phrase "without that other person's permission." He wrote that despite the district court's error in refusing to instruct the jury that such knowledge was necessary to convict, the error was harmless because no reasonable juror could have concluded that the defendant subjectively believed he had permission to touch a sleeping stranger's breast.

## COUNSEL

Jonathan D. Libby (argued), Deputy Federal Public Defender; Hilary L. Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Christopher C. Kendall (argued), Assistant United States Attorney; Lawrence S. Middleton, Chief, Criminal Division; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

WARDLAW, Circuit Judge:

It is a federal crime under 18 U.S.C. § 2244(b), enacted as part of the Sexual Abuse Act of 1986, to knowingly engage in sexual contact with another person without that other person's permission on an international flight. During an overnight flight from Tokyo, Japan to Los Angeles, California, Juan Pablo Price, a forty-six-year-old man, moved from his assigned seat to an open seat adjacent to that

of a sleeping twenty-one-year-old female Japanese student, where he fondled her breast and slipped his hand into her underwear, touching her vagina. The jury convicted Price under 18 U.S.C. § 2244(b), finding that the government proved beyond a reasonable doubt that Price knowingly had sexual contact with the victim and that the sexual contact was without the victim's permission. Price appeals his conviction, contending that the government was also required to prove beyond a reasonable doubt that he subjectively knew that his victim did not consent.

We reject Price's reading of the statute as contrary to its text, the structure of the statutory scheme and its very purpose in penalizing those who sexually prey upon victims on the seas or in the air within federal jurisdiction. Congress's purpose in enacting the Sexual Abuse Act of 1986 was to criminalize sexual contact by focusing on the defendant's conduct. If the government were required to prove that the defendant subjectively knew he lacked consent, as Price urges here, every accused sexual predator could defend his admitted sexual contact in the face of no objective sign of permission by asserting a supposed subjective belief that the victim was "enjoying herself," a result directly contrary to the purpose of the 1986 Act. Even Price recognized, following his arrest, that "it sure is going to be my job not to touch a woman" whom he doesn't know and hasn't talked to. As the arresting officer responded to Price, "in your forty something years, you should've already known that[]."

Because unwanted sexual contact of the type Price engaged in—touching first, and arguing later that he "thought" the victim consented—is precisely what § 2244(b) criminalizes, we reject Price's claim of instructional error. We also conclude that the police had probable cause to arrest

Price, that he was properly Mirandized, and that the district court acted within its discretion in refusing to read back to the jury portions of the victim's testimony. We therefore affirm Price's conviction and sentence.

## I.

The objective facts are fairly undisputed. Price, then forty-six, was a passenger on the overnight flight from Tokyo, Japan to Los Angeles, California. A.M., a twenty-one-year-old college student, and her friend, Maki Fujita, were traveling on the same flight. After take-off, Price asked A.M. if he could move from his assigned seat to the unoccupied seat next to her, a seat where the video monitor was not working, explaining that his original seat had limited legroom. A.M. said "okay." Price attempted to engage A.M. in conversation, but A.M. could not speak English very well, and he eventually realized that she was not completely understanding what he was saying. A flight attendant, Hidemori Ejima, noticed that Price had changed his seat, and asked him why. When Price responded that he wanted more legroom, Ejima offered Price another seat with a working video monitor and three times more legroom. Price declined the offer—something Ejima had not seen before in his twenty-five years as a flight attendant. After food service, Ejima handed Fujita a note warning Fujita and A.M. to "watch out" for the person sitting next to them. A.M. interpreted the warning to mean that Price might try to steal her wallet or other belongings. She moved her purse and wallet deeper into her bag and fell asleep.

A.M. woke up to Price touching the right side of her body, including her arm, hip, and leg. Thinking that Price was trying to steal the cell phone in her pocket, she moved the phone to inside the seat pocket and went back to sleep. When A.M. awoke again, Price was touching her breast.

A.M. began panicking, but did not want to bother the people around her. She tried to avoid Price's touch by pulling the blankets up to her shoulder and crossing her arms in front of her. Undeterred, Price placed his blanket over both of them, covering his arms, and continued to touch her breast, first over her shirt and then under it. Price then moved his hand into A.M.'s jeans and underwear and touched her vagina.

In a state of shock, panic, and fear, and looking for the words to tell Price to stop, A.M. twisted her body toward Fujita on her left, away from Price. Price hauled her back around with "strong force" and tried to pull her jeans down. At this point, Fujita woke up, and, seeing her awake, Price retreated to his seat. When Fujita asked A.M. if she was okay, A.M. responded that she was not and asked what she should do. Fujita told her to tell the flight attendant. A.M. did not have the English words to explain what happened, although she was able to ask for "help."

Price's perception of the encounter differed from the others on the plane. He testified that while his hand was on the armrest, he felt A.M.'s hand touch his. Thinking that this could be an invitation, Price began to rub her hand. Price stated that they started holding and rubbing each other's hands. As he began moving his hands across A.M.'s body and to her breast area, he thought she was "enjoying herself" because she was arching her body, he could feel her heartbeat, her breathing was intense, and she was opening and closing her eyes. It was only when Price tried to move her face toward him and A.M. would not budge that Price thought something was wrong. At that point, Price noticed that Fujita was awake, and A.M. then got up. According to both A.M.'s and Price's accounts, no words were exchanged during this encounter. Price agrees A.M. did not verbally consent to his touching her.

While A.M. got up to tell the flight attendant what happened, Price wrote a note that he never ended up giving to A.M., which said, "If a man touches you and you don't want him to always feel free to say No." The purser or lead chief flight attendant, Yosri Zidan, then obtained written statements from both Price and A.M. Price's story was that he changed seats because he wanted more legroom; he then fell asleep and awoke to find A.M. stroking his hand.

While still in flight, the pilot sent a message to American Airlines employees at Los Angeles International Airport (LAX) that read, "WE NEED LAX POLICE TO MEET AIRPLANE [/] WE HAVE A MOLESTER/FONDLER ON BOARD." The LAX Police Department (LAXPD) then contacted the Transportation Security Administration (TSA), who in turn contacted the Federal Bureau of Investigation (FBI). Special Agent David Gates (S.A. Gates) of the FBI instructed the sergeant at LAX to first investigate the incident to determine if he needed to respond.

On February 18, 2015, after a federal grand jury indicted Price for abusive sexual contact under 18 U.S.C. § 2244(b), Price was formally arrested. Price filed a pre-trial motion to suppress evidence found in his bag and cell phone, and his statements to the LAXPD officers and to S.A. Gates, arguing that he was arrested without probable cause upon the flight's arrival at LAX and that he was questioned without being given *Miranda* warnings. The government and Price disputed the 18 U.S.C. § 2244(b) jury instruction, based on the statute's use of the word "knowingly." The district court ultimately selected the Ninth Circuit's Model Criminal Jury Instruction for § 2244(b) and the additional instruction proposed by Price that "permission" under § 2244(b) can be express or implied, "that is[,] inferred from words or actions." The district court denied Price's request to instruct

the jury that, in addition, the government must prove that Price "knew the sexual contact was without A.M.'s permission." The district court reasoned "that it is appropriate not to read into the statute that which it does not say it requires."

Price timely appeals.

## II.

18 U.S.C. § 2244(b) provides:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in sexual contact with another person without that other person's permission shall be fined under this title, imprisoned not more than two years, or both.

"Sexual contact" is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). The Ninth Circuit's model instruction provides:

> The defendant is charged in [Count _____ of] the indictment with abusive sexual contact in violation of Section 2244(b) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt: First, the defendant knowingly had sexual contact with [*name of victim*]; Second, the sexual contact was without [*name of*

*victim*]'s permission; and Third, the offense was committed at [*specify place of federal jurisdiction*]. In this case, "sexual contact" means [*specify statutory definition*].

Manual of Model Criminal Jury Instructions § 8.180 (2010) (Ninth Cir. Jury Instructions Comm., amended 2015). The model instruction does not ask the jury to find that the defendant subjectively knew that he lacked the victim's permission. Price argues that the model instruction was given in error.

Whether "a jury instruction misstates elements of a statutory crime" is an issue we review de novo. *United States v. Knapp*, 120 F.3d 928, 930 (9th Cir. 1997). We have not yet addressed whether the term "knowingly" in § 2244(b) applies to the phrase "without that other person's permission." As a matter of statutory interpretation, we generally consider the statute's language, purpose, history, and past decisions and controlling law to determine whether the district court properly instructed the jury. *See Taylor v. United States*, 495 U.S. 575, 581 (1990); *United States v. Lo*, 447 F.3d 1212, 1229 (9th Cir. 2006).

**A.**

Our analysis begins with the text of the statute. "In determining what mental state is required to prove a violation of the statute, we look to its words and the intent of Congress." *United States v. Johal*, 428 F.3d 823, 826 (9th Cir. 2005). We keep in mind the "background rules of the common law in which the requirement of some *mens rea* for a crime is firmly embedded." *Staples v. United States*, 511 U.S. 600, 605 (1994) (citation omitted).

We begin with the statutory text and interpret "statutory terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary." *I.R. ex rel. E.N. v. L.A. Unified Sch. Dist.*, 805 F.3d 1164, 1167 (9th Cir. 2015) (citation omitted). Examining the text of § 2244(b), we conclude that its most natural grammatical meaning is that the government must prove that the defendant knew he engaged in sexual contact, not that it prove that the defendant subjectively knew he lacked consent. The term "knowingly" modifies only the verb phrase "engages in sexual contact with another person" and does not modify the adverbial prepositional phrase "without that other person's permission."

In *United States v. X-Citement Video, Inc.*, the Supreme Court examined the Protection of Children Against Sexual Exploitation Act of 1977, which punishes, *inter alia,* any person who "knowingly transports or ships in interstate or foreign commerce" or who "knowingly receives, or distributes . . . , or knowingly reproduces" from such commerce "any visual depiction, if—(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 513 U.S. 64, 68 (1994) (quoting 18 U.S.C. § 2252(a) (1988 ed. & Supp. V 1993)). The "critical determination" the Court had to make was whether the term "knowingly," in the phrases "knowingly transports or ships" and "knowingly receives, or distributes" modifies not only those verbs but also the phrase "the use of a minor." *Id.* The Court recognized that "[t]he most natural grammatical reading . . . suggests that the term 'knowingly' modifies only the surrounding verbs: transports, ships, receives, distributes, or reproduces." *Id.* at 68. Nevertheless the Court was "reluctan[t] to simply follow the most grammatical reading of the statute," because the results of that reading were "positively absurd" and would "sweep

within the ambit of the statute actors who had no idea that they were even dealing with sexually explicit material." *Id.* at 69–70.

We followed suit in construing the most natural grammatical reading of a statute in *United States v. Backman*, 817 F.3d 662 (9th Cir. 2016). There we construed an analogous mens rea requirement in a criminal sex trafficking statute, the Trafficking Victims Protection Act of 2000. That statute required proof that the defendant "*knowingly*—(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person." *Id.* at 666–67 (quoting 18 U.S.C. § 1591(a)). We rejected the defendant's argument that the government must prove, in addition to proving knowing recruitment, that he knew his acts affected interstate or foreign commerce, concluding "it is most natural to read the adverb 'knowingly' in [18 U.S.C.] § 1591(a) to modify the verbs that follow: 'recruits, entices, harbors, transports, provides, obtains, or maintains.' The phrase 'in or affecting interstate or foreign commerce' describes the nature or extent of those actions but, grammatically, does not tie to 'knowingly.'" *Id.* at 667.

Similarly, here, the phrase "without that other person's permission" describes the nature or extent of the prohibited action "engag[ing] in sexual contact" but, grammatically, does not tie to the term "knowingly." 18 U.S.C. § 2244(b). Price attempts to distinguish *Backman* on the ground that the phrase "in or affecting interstate or foreign commerce" is jurisdictional, but that was only a secondary rationale for our *Backman* holding, which we found persuasive in a Seventh Circuit opinion, *United States v. Sawyer*, 733 F.3d 228 (7th Cir. 2013). The principal rationale in *Backman* was our view

of the statute's most natural grammatical reading, which demonstrates the statute's ordinary meaning.

Our reading of § 2244(b) is consistent with our precedent for interpreting mens rea requirements in criminal statutes. "When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Elonis v. United States*, 135 S. Ct. 2001, 2010 (2015) (internal quotation marks and citation omitted). Thus, although courts must be careful not to interpret crimes too broadly, "[i]n some cases, a general requirement that a defendant *act* knowingly is itself an adequate safeguard." *Id.*

Here, the other elements of § 2244(b) provide that adequate safeguard. First, the statute already provides for a mens rea requirement that the defendant engage in sexual contact knowingly, rendering unnecessary a second mens rea requirement. *See Lo*, 447 F.3d at 1230 (finding that a conviction under 21 U.S.C. § 841(c)(2) did not require knowledge that the substance was a listed chemical, because the mens rea requirement that the defendant knowingly possessed or distributed the chemical was sufficient to ensure that "apparently innocent conduct is not criminalized"). Second, the government must also prove beyond a reasonable doubt that the sexual contact was without the victim's permission, which is sufficient to render it wrongful. *See, e.g.*, *United States v. Gavin*, 959 F.2d 788, 791–92 (9th Cir. 1992). As the district court properly recognized in instructing the jury on "permission," although it is an objective concept, it includes both explicit and implicit permission, and may be proven by circumstantial evidence. Thus, hewing close to the natural grammatical reading of "knowingly" here does not portend "absurd"

results that would sweep up innocent actors not intended to be covered by the statute. *Cf. X-Citement Video*, 513 U.S. at 69.

*Flores-Figueroa v. United States*, 556 U.S. 646 (2009), is inapposite. In *Flores-Figueroa*, the Supreme Court considered a federal aggravated identity theft statute that provided for an increased criminal penalty of an additional two years of imprisonment for certain offenses if the offender "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1). The Court concluded that the term "knowingly" modified the entire sentence such that the government needed to show that the defendant knew that the "means of identification" belonged to "another person." *Flores-Figueroa*, 556 U.S. at 657; *see also id.* at 650 ("It makes little sense to read the provision's language as heavily penalizing a person who 'transfers, possesses, or uses, without lawful authority' a *something*, but does not know, at the very least, that the 'something' (perhaps inside a box) is a 'means of identification.' Would we apply a statute that makes it unlawful '*knowingly* to possess drugs' to a person who steals a passenger's bag without knowing that the bag has drugs inside?").

Price argues that *Flores-Figueroa* requires us to adopt his interpretation of § 2244(b) because "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *Id.* at 652. But Price erroneously takes the *Flores-Figueroa* holding out of the context of the aggravated identity theft statute. As the Court reasoned, *Flores-Figueroa*'s directives were specific to particular grammatical contexts that "[i]n ordinary English, where a transitive verb has an object, listeners in most

contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Id.* at 650. This grammatical structure does not appear in § 2244(b), where the phrase in question—"without that other person's permission"—is not the object of the sentence but an adverbial prepositional phrase.

Second, and most importantly, in *Flores-Figueroa*, the mens rea requirement was necessary to "separate wrongful conduct from otherwise innocent conduct." *Elonis*, 135 S. Ct. at 2010 (internal quotation marks and citation omitted). By contrast, "[h]ere, there is no potential for the penalization of innocent conduct nor do we face constitutional avoidance concerns." *United States v. Jefferson*, 791 F.3d 1013, 1016–18 (9th Cir. 2015) (finding it unnecessary to extend the "knowingly or intentionally" mens rea to the type and quantity of drugs at issue, where the requirement that the government prove the other elements of the case was "sufficient to ensure the statute penalizes only culpable conduct"). We have explicitly rejected the notion that the Court's reading of "knowingly" in *Flores-Figueroa* compels the same reading in every criminal statute that uses the word "knowingly." *See id.* at 1017–18 ("Because [21 U.S.C.] § 960's statutory text and structure are not parallel to that of § 1028A(a)(1), the ordinary grammatical interpretive rules articulated in *Flores-Figueroa* do not apply here."); *United States v. Stone*, 706 F.3d 1145, 1147 (9th Cir. 2013) ("[T]he Court in *Flores-Figueroa* did not announce an 'inflexible rule of construction.' Rather, statutory interpretation remains a contextual matter." (citations omitted)); *United States v. Castagana*, 604 F.3d 1160, 1166 (9th Cir. 2010) (rejecting the argument that the court "treat 'with intent' the same way the Supreme Court treated 'knowingly' in *Flores-Figueroa*" because "the language of the statute in *Flores-*

*Figueroa* is not parallel to that of [18 U.S.C.] § 1038(a)(1)"). Indeed, the *Flores-Figueroa* Court itself cautioned that "the inquiry into a sentence's meaning is a contextual one." 556 U.S. at 652.

As the *X-Citement Video* Court advised, however, this does not necessarily end our analysis "because of the respective presumptions that some form of scienter is to be implied in a criminal statute even if not expressed." 513 U.S. at 69. We therefore next examine the structure, *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018), and legislative history of the statute, to determine if we, like the *X-Citement Video* Court, should be reluctant to "simply follow the most grammatical reading of the statute," 513 U.S. at 70.

**B.**

Section 2244(b) is part of a statutory scheme criminalizing abusive sexual contact. First, subsection (a) criminalizes conduct that, "had the sexual contact been a sexual act," would be "punished [elsewhere] by this chapter." 18 U.S.C. § 2244(a). Second, subsection (b) criminalizes sexual contact "[i]n other circumstances." *Id.* § 2244(b). Finally, subsection (c) enhances the sentence "[i]f the sexual contact that violates this section (other than subsection (a)(5)) is with an individual who has not attained the age of 12 years." *Id.* § 2244(c).

Subsections 2244(a) and 2244(b) work in parallel ways, and we must read the two subsections together. *See United States v. Lewis*, 67 F.3d 225, 228–29 (9th Cir. 1995) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme."). Both § 2244(a) and (b) require that the defendant "knowingly" have "sexual contact" and set forth one

additional element of the offense.    In § 2244(a), the additional element the government must prove is that the sexual contact would be punishable by certain other statutes if the sexual contact had instead been a sexual act;[1] in § 2244(b), the additional element is the victim's lack of permission.  The government is not required to prove that the defendant knew that the second element of § 2244(a) was met—in other words, the government need not prove that the defendant knew that the sexual contact he engaged in would have been punished by another law if the contact had risen to the level of a sexual act.  We have not read § 2244(a)(3) to tie the word "knowingly" to the second element.  Courts have instead read the second element as subject to objective proof.  *United States v. Granbois*, 376 F.3d 993, 995 (9th Cir. 2004) (delineating the elements for conviction under § 2244(a)(3), which does not include a mens rea requirement

---

[1] 18 U.S.C. § 2246(2) defines the term "sexual act" as

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

for the second element); *see also United States v. Jennings*, 496 F.3d 344, 352 (4th Cir. 2007) (concluding that to determine a violation of § 2244(a)(3), "under the straightforward language of the statute, we are to read § 2243(a) and determine whether [the defendant] had committed that offense, substituting for 'sexual act' the term 'sexual contact'"). To read "knowingly" to apply to the second element in § 2244(a) would both be grammatically unnatural and produce absurd results. Because a conviction under § 2244(a) does not require that the government prove the defendant's knowledge of the additional element, we should read § 2244(b) in the same manner.

Price argues that reading the statute along with its neighboring provisions, 18 U.S.C. § 2241(c) and § 2243(a), requires the opposite interpretation. Section 2244(b) follows the same general sentence structure as the other two subsections—although the other two subsections address sexual acts with minors, a more serious crime than sexual contact. According to Price, because § 2241(d) and § 2243(d) expressly provide that "the Government need not prove that the defendant knew" the age of the minor, the absence of such a provision in § 2244(b) indicates that Congress intended that the government must prove that the defendant knew that sexual contact was without permission. We disagree.

Sections 2241 (aggravated sexual abuse) and 2243 (sexual abuse of a minor or ward) impose severe penalties, with maximum sentences of life imprisonment and fifteen years, respectively. By contrast, § 2244(b) prescribes a maximum sentence of no more than two years.[2] We generally expect that criminal laws subject to potentially

---

[2] The district court sentenced Price to probation for three years.

more severe penalties would require more stringent mens rea requirements. *See Staples*, 511 U.S. at 618 ("[A] severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement."); *cf. United States v. Gomez-Leon*, 545 F.3d 777, 793 (9th Cir. 2008) ("Commensurate with lesser punishment is a lesser mens rea requirement . . . ." (citation omitted)). Thus, Congress's decision to expressly eliminate the mens rea requirements in § 2241 and § 2243 is not instructive of the proper interpretation of § 2244(b). Sections 2241 and 2243, with their harsh sentencing maximums, require the explicit statement that "the Government need not prove that the defendant knew" the age of the minor victim in order to overcome the strong presumption "that Congress did not intend to eliminate a *mens rea* requirement." *Staples*, 511 U.S. at 618. Section 2244(b) does not give rise to the same strong presumption because its violation bears a dramatically less severe consequence. Moreover, § 2243(c) provides that mistake about age can be a defense, making § 2243(d) necessary to clarify that knowledge of age is not an element. Therefore, Congress's decision not to explicitly eliminate the knowledge requirement in § 2244(b) is of no import. It would have been redundant to do so because it was already clear from the language of the statute itself, together with its relatively light penal consequence, that the government need not prove knowledge as to the second element.[3]

---

[3] Price points to an Eighth Circuit opinion that relied on this comparison with § 2241(c) and § 2243(a) to hold that 18 U.S.C. § 2242(2), which addresses sexual abuse of an incapacitated person, requires that the defendant knew the victim was incapacitated or unable to grant consent. *United States v. Bruguier*, 735 F.3d 754, 761 (8th Cir. 2013) (en banc). We are not persuaded by Price's argument because § 2242(2) also has a severe maximum penalty of life imprisonment,

Furthermore, Price's logic would produce absurd results in interpreting § 2244 as a whole. Subsection 2244(c) provides that, "If the sexual contact that violates this section (other than subsection (a)(5)) is with an individual who has not attained the age of 12 years, the maximum term of imprisonment that may be imposed for the offense shall be twice that otherwise provided in this section." That the only mens rea requirement in § 2244(a) and (b) is the defendant's knowing engagement in sexual contact is only bolstered by § 2244(c)'s omission of any explicit provision that the defendant need not know the person was under the age of twelve. Price's argument would read into subsection (c) a requirement that the government prove that the defendant knew that the child was under twelve to sustain a conviction under § 2244(c). Congress could not have intended to impose that extra mens rea requirement on sexual contact with a child under § 2244(c), with less severe penalties, when it chose not to impose that requirement on sexual abuse of a child under § 2241(c) and § 2243(a), with penalties as severe as life in prison.

## C.

"Although we need not rely on legislative history because the statute is unambiguous, the legislative history of the statute and common sense support" our conclusion. *Castagana*, 604 F.3d at 1164. Congress's stated purpose in enacting the Sexual Abuse Act of 1986 was to "modernize[] and reform[] Federal rape provisions by . . . defining the offenses so that the focus of a trial is upon the conduct of the defendant" and "expanding the offenses to reach all forms of sexual abuse of another," among other changes. H.R. Rep.

---

unlike § 2244(b). We do not think the Eighth Circuit's interpretation of § 2242(2) affects our analysis of § 2244(b) in any way.

No. 99-594, at 10–11 (1986). The House Report also communicated Congress's expectation that the law would "simplify law enforcement" activities. *Id.* at 21. It would be inconsistent with these goals to hold that Congress intended to require proof that the defendant subjectively knew the victim did not consent.

In enacting the 1986 Act, Congress was concerned with whether lack of consent needed to be an element at all, and it consistently described this element in objective terms. *See, e.g.*, *id.* at 13 ("Where the Committee believes it appropriate to the offense to require the prosecution to show that the conduct was engaged in without the victim's permission, such a requirement has explicitly been set forth."). Congress would not have singled out § 2244(b) for an onerous burden of proof without comment given that its goal was to facilitate prosecutions. *See id.* at 12 (explaining that the 1986 Act was "drafted broadly to cover the widest possible variety of sexual abuse"); *cf. Lo*, 447 F.3d at 1231 (9th Cir. 2006) ("[I]t seems very unlikely that Congress would have chosen to make prosecution more difficult by requiring proof that the defendant knew that the chemical was a listed chemical, while at the same time seeking to expand the scope of prosecution for the possession and distribution of precursor chemicals by increasing the number of chemicals that could provide the basis for prosecution.").[4]

---

[4] We agree with Judge Gilman's conclusion that even if the statute required the government to prove that Price subjectively knew the sexual contact was without permission, any error in the jury instruction was harmless. *See United States v. Pierre*, 254 F.3d 872, 877 (9th Cir. 2001). Given the totality of the circumstances, it was clear beyond a reasonable doubt that Price subjectively knew that he did not have permission to have sexual contact with A.M.

## III.

Price also argues that all of his statements and the evidence seized from him when he was escorted from the plane and handcuffed by LAXPD Officers Christopher Faytol and Ngan Lee, and at least one U.S. Customs and Border Protection officer, should be suppressed. He contends that the officers lacked probable cause to arrest him at the arrival gate. The district court concluded that because the officers did not arrest Price at that time, there was no need to demonstrate probable cause. While we disagree with the district court as to whether an arrest occurred, we conclude that the officers had probable cause to arrest Price as he disembarked from the plane. Therefore, the district court did not err by denying Price's suppression motion.

We review de novo the denial of a motion to suppress, although we review underlying factual findings for clear error. *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003). "The determination of probable cause to arrest a suspect is a mixed question of law and fact reviewed de novo." *United States v. Nava*, 363 F.3d 942, 944 (9th Cir. 2004) (citation omitted).

In the context of an international border, an arrest occurs when "a reasonable person would believe that he is being subjected to more than the temporary detention occasioned by border crossing formalities." *United States v. Bravo*, 295 F.3d 1002, 1009 (9th Cir. 2002) (internal quotation marks and citation omitted). We ask, considering the totality of the circumstances, "whether a reasonable innocent person in such circumstances would conclude that *after brief questioning he or she would not be free to leave*." *Id.* (internal quotation marks and citation omitted). "[H]andcuffing is a substantial factor in determining whether an individual has been arrested"—although it

"alone is not determinative." *Id.* at 1010; *see also United States v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009) ("[O]fficers with a particularized basis to believe that a situation may pose safety risks may handcuff or point a gun at an individual without converting an investigative detention into an arrest.").

Price was escorted by three armed law enforcement officers off the plane at a remote gate, while the rest of the passengers remained seated. Officer Faytol performed a pat-down search and Officer Lee handcuffed him. This was not a routine border airport screening and search process, as the district court found. Although the officers cited safety justifications for handcuffing Price, including the fear that Price might become aggressive as other passengers deplaned, the officers kept Price in handcuffs until the FBI interviewed him—from the time Price deplaned at approximately 9:08 AM, until after S.A. Gates arrived at around 11:30 AM. This was not a "temporary detention occasioned by border crossing formalities"; this was an arrest. *Bravo*, 295 F.3d at 1009 (citation omitted).

We nevertheless conclude that the officers had probable cause to believe Price had committed a crime when they arrested him. Police may arrest a suspect if "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) (internal alteration marks and citation omitted). We must "consider the nature and trustworthiness of the evidence of criminal conduct available to the police." *Id.* at 1064. The police need not know, however, precisely what offense has been committed. *See United States v. Chatman*, 573 F.2d 565, 567 (9th Cir. 1977) (per curiam) (finding

probable cause where officers believed only that the defendant was "clandestinely engaging in illegal business of some kind").

Here, the officers had "reasonably trustworthy information" to arrest Price as he deplaned. *Beier*, 354 F.3d at 1064. They knew that a female passenger had reported that Price had perpetrated a sexual offense. The pilot had sent an advance message asking LAXPD to meet the airplane, stating "WE HAVE A MOLESTER/FONDLER ON BOARD." The actions of the flight crew demonstrated that they viewed the allegations as credible as they sought law enforcement assistance.

We reject Price's argument that the officers lacked probable cause because the information available to the officers was not trustworthy. We acknowledge the minor differences in the officers' recollections of the event at the suppression hearing—Faytol recalled that the incident was a "290," the code for sexual battery, while Lee recalled that the incident was a "311," the code for indecent exposure. However, these differences did not render the information untrustworthy. Price also points to S.A. Gates's testimony that mid-flight reports can be unreliable because they involve a series of messengers. Although we disagree that mid-flight reports are categorically so untrustworthy that they can never establish probable cause, we need not address these concerns here because before arresting Price, the officers spoke directly with the purser, lead flight attendant Zidan, who reported that a female passenger had complained about a male passenger touching her and gave details about where both individuals were sitting on the plane. Based on purser Zidan's report, "a prudent person would have concluded that there was a fair probability that the defendant

had committed a crime." *Id.* at 1065 (internal alteration marks and citation omitted).

## IV.

Price also moved to suppress the statements he made to S.A. Gates when he was interviewed, contending that he did not adequately understand his rights when he waived them. He points to the transcript of the interview where he expressed confusion as to whether he was being arrested. We agree with the district court, however, that though Price may have been confused about whether he was under arrest, there was no doubt that his *Miranda* waiver was knowing, intelligent, and voluntary, and that his statements were voluntarily made. "We review a district court's ruling on a *Miranda* waiver under two standards: Whether the waiver was knowing and intelligent is a question of fact that we review for clear error. Whether the waiver was voluntary is a mixed question of fact and law, which we review de novo." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir.) (citation omitted), *amended by* 416 F.3d 939 (9th Cir. 2005). "We review de novo the voluntariness of a confession and the factual findings supporting the determination for clear error." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009) (citation omitted).

Before S.A. Gates interviewed Price, he removed the handcuffs. S.A. Gates then explained to Price his *Miranda* rights, describing it as "just like you see on T.V." Price first sought clarification that he was not arrested, which S.A. Gates confirmed, and S.A. Gates then recited the *Miranda* rights, as Price read along and responded "Mm-hmm" at various points. At the end, Price asked once again whether or not he was under arrest, noting that in movies, when you hear *Miranda* rights, "you know that somebody is being arrested." S.A. Gates again assured Price that he was not

under arrest. Price signed the "Advice of Rights" form. At the end of the interview, S.A. Gates cited Price with simple assault and allowed him to leave.

"To admit an inculpatory statement made by a defendant during custodial interrogation, the defendant's waiver of *Miranda* rights must be voluntary, knowing, and intelligent." *United States v. Shi*, 525 F.3d 709, 727 (9th Cir. 2008) (internal quotation marks and citation omitted). In determining the knowing and intelligent nature of the waiver, we consider the totality of the circumstances, including

> (i) the defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system.

*United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007) (citation omitted).

Price disputes only the fourth factor—whether he understood his rights. Price argues that his questions to S.A. Gates showed that he did not understand that he could exercise his *Miranda* rights. However, Price's questions were all directed towards clarifying whether or not he was actually under arrest. As the district court found, Price "was not confused as to the nature and extent of his rights" but rather "was confused about why ('the reason') he was being

read his rights given that SA Gates had told him only moments earlier that he was not under arrest."

We must also find that both Price's waiver and the statements themselves were voluntary. A *Miranda* "waiver is voluntary if, under the totality of the circumstances, the confession was the product of a free and deliberate choice rather than coercion or improper inducement." *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998) (en banc) (citation omitted). We find the confession voluntary unless, "considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Heller*, 551 F.3d at 1112 (citation omitted).

We agree with the district court that both Price's waiver and his statements were voluntary. Price mischaracterizes the record of the interview. S.A. Gates never threatened Price with his power to detain him unless he answered S.A. Gates's questions. It is evident from the record that S.A. Gates stated in a jocular manner that he could find a reason to arrest Price if Price wanted—a joke that elicited Price's laughter—and S.A. Gates explained that it was his expectation that Price would "walk out of here" that day. The interview does not reveal any sign of coercion: Price was not in handcuffs or otherwise physically restrained, and the FBI agents asked Price if he was doing okay and if he needed water or to use the bathroom.

## V.

The district court did not abuse its discretion by declining to read back A.M.'s testimony when requested by the jury. We review denials of a jury's request to read back a witness's testimony for abuse of discretion and have noted

"the district court's great latitude to address requests for readbacks." *United States v. Medina Casteneda*, 511 F.3d 1246, 1249 (9th Cir. 2008). "In general, rereading is disfavored because of the emphasis it places on specific testimony and the delay it causes in the trial." *United States v. Nolan*, 700 F.2d 479, 486 (9th Cir. 1983) (citation omitted). During deliberations, the jury asked for a transcript of Price's FBI interview and of A.M.'s testimony. We reject Price's argument that because the district court acquiesced to the jury's request by replaying the recording of Price's FBI interview, the simultaneous decision not to read back A.M.'s testimony was improper.

Here, the district court gave two appropriate reasons for denying the readback. First, it cited the logistical difficulties in preparing a readback, and second, it expressed concern that reading back A.M.'s testimony without also reading back Price's testimony would lead to an unfair focus on one part of the trial over others. We have determined that the district court's rationale is appropriate as a basis for declining a readback of testimony. *See, e.g.*, *Medina Casteneda*, 511 F.3d at 1249 (finding no abuse of discretion in the district court's denial of the jury's request for a readback because of the concern that the jury would focus on "one particular piece of evidence at the expense of other evidence").

## VI.

In enacting the Sexual Abuse Act of 1986, of which 18 U.S.C. § 2244(b) is a part, Congress sought to expand criminal culpability for sexual acts and contacts and facilitate prosecution of those crimes. Thus it placed the burden on the actor who knowingly engages in sexual contact with another person to *first* obtain that person's consent, objectively given. The government need not prove

that the defendant subjectively knew he lacked consent, as Price asserted here. It need only prove that the victim did not consent as an objective matter. Because Price's remaining contentions also lack merit, we **AFFIRM** his conviction and sentence.

---

GILMAN, Circuit Judge, concurring:

I concur in the lead opinion's conclusion that Juan Pablo Price's conviction should be affirmed. But I respectfully disagree with its holding that the term "knowingly" in 18 U.S.C. § 2244(b) modifies only the phrase "engages in sexual contact with another person" and does not extend to the phrase "without that other person's permission." That holding is contrary to the plain text of the provision and its place in the overall statutory scheme.

In order to obtain a conviction under 18 U.S.C. § 2244(b), I believe that the government has the burden of proving that Price subjectively knew that he was acting without A.M.'s permission. The statute, in other words, does not criminalize otherwise innocent sexual contact based on a fact—the lack of permission—unknown to the defendant. That the defendant knew he lacked permission may be proved by circumstantial evidence but, nevertheless, the defendant's subjective knowledge is an issue to be resolved by the jury.

Accordingly, the district court erred in refusing to instruct the jury that such knowledge was necessary to convict Price under 18 U.S.C. § 2244(b). Despite the court's faulty instructions, however, the error was harmless beyond a reasonable doubt because no reasonable juror could have concluded that Price subjectively believed that he had

permission to touch a sleeping stranger's breast.  I therefore concur in the ultimate judgment reached by the lead opinion.

**Introductory Note**

Prior to his death in March 2018, Judge Stephen Reinhardt was a member of this panel and prepared a draft opinion holding that the "knowingly" mens rea requirement contained in 18 U.S.C. § 2244(b) should be applied to each element of the offense, including that the sexual contact be without the other person's permission.  Unabashedly, much of this concurrence can be attributed to the portions of Judge Reinhardt's draft opinion with which I fully agree.

**I.**

This case requires us to interpret the following statute:

> Whoever, in the special maritime and territorial jurisdiction of the United States, . . . *knowingly* engages in sexual contact with another person *without that other person's permission* shall be fined under this title, imprisoned not more than two years, or both.

18 U.S.C. § 2244(b) (emphases added).  For the following reasons, I disagree with the lead opinion's conclusion that a conviction under § 2244(b) does not require the government to prove that the defendant knew that he lacked permission to engage in sexual contact with the other person.

**A.**

In *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), the Supreme Court interpreted a statute that provided for increased criminal penalties for certain offenses if the

offender "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." *Id.* at 648. The Court held that, "[i]n ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed *the entire action*, including the object as set forth in the sentence." *Id.* at 650 (emphasis added). Moreover, "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *Id.* at 652; *see also id.* at 660 (Alito, J., concurring) ("I think it is fair to begin with a general presumption that the specified *mens rea* applies to all the elements of an offense . . . .").

The statute that we are asked to interpret, just like the one in *Flores-Figueroa*, lists all of the elements of the offense in a single phrase that begins with the word "knowingly." *Flores-Figueroa* therefore requires us to presume that the word "knowingly" dictates how the defendant must have "performed the entire action"—that is, that he knew that he was engaging in sexual contact *and* that he knew he was doing so without the other person's permission. *See id.* at 650 (majority opinion). Sexual contact with permission and sexual contact without permission are legally worlds apart.

The Eighth Circuit reached the same conclusion in interpreting a related statute in *United States v. Bruguier*, 735 F.3d 754 (8th Cir. 2013) (en banc). That statute, 18 U.S.C. § 2242(2), applies to anyone who, in certain extended federal jurisdictions, "knowingly— . . . engages in a sexual act with another person if that other person is— (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or

communicating willingness to engage in, that sexual act." Pursuant to *Flores-Figueroa*, the Eighth Circuit held that "there is a presumption that 'knowingly' in section 2242(2) applies to the circumstances following the conjunction 'if.'" *Id.* at 758.

The case for applying the *Flores-Figueroa* presumption to § 2244(b) is even stronger than it is for applying that presumption to § 2242(2). In *Bruguier*, the dissent identified three aspects of the text of § 2242(2) that, it argued, counseled against applying the *Flores-Figueroa* presumption: (1) "[t]he requirement of 'knowingly' is . . . set apart by two sets of interruptive punctuation" from the element at issue, (2) the relevant elements in § 2242(2) are contained in a "conditional 'if' clause," and (3) the relevant elements in § 2242(2) are contained in "separate subsections describing the victim's condition." *Bruguier*, 735 F.3d at 775–77 (Murphy, J., concurring in part and dissenting in part). None of those facts are true of § 2244(b). If the *Flores-Figueroa* presumption applies to § 2242(2), then it certainly applies to the much simpler and more straightforward phrase defining the offense in § 2244(b).

The lead opinion disagrees, contending that *Flores-Figueroa* is inapposite for two reasons. First, the lead opinion argues that *Flores-Figueroa* does not apply to § 2244(b) because "the phrase in question—'without that other person's permission'—is not the object of the sentence but an adverbial prepositional phrase." Lead Op. 14. Even assuming that the lead opinion's grammatical analysis is correct, the conclusion reached does not logically follow. *Flores-Figueroa* did not turn on whether the element modified the verb or the object, nor did it transform us into "a panel of grammarians." *Flora v. United States*, 362 U.S. 145, 150 (1960). Rather, it recognized a broadly applicable

principle—i.e., that "knowingly" typically tells us how the defendant "performed the entire action." *Flores-Figueroa*, 556 U.S. at 650.

Second, the lead opinion argues that, "in *Flores-Figueroa*, the mens rea requirement was necessary to 'separate wrongful conduct from otherwise innocent conduct,'" whereas § 2244(b) without a mens rea requirement for its lack of permission element would not penalize innocent conduct. Lead Op. 14. But the lead opinion fails to explain why § 2244(b) would not in fact do exactly that if the government need not prove that the defendant subjectively knew that he lacked permission to engage in sexual contact with the other person.

The inclusion of *some* mens rea requirement is not necessarily enough to ensure that "a broad range of apparently innocent conduct" is not swept into a criminal prohibition. *Liparota v. United States*, 471 U.S. 419, 426 (1985). If a mens rea requirement is interpreted to require knowledge of only innocent facts, then a person could be convicted despite genuinely believing that his acts were entirely proper. *Staples v. United States*, 511 U.S. 600, 612, 618–19 (1994).

Knowingly engaging in sexual contact is, of course, not illegal. Innocent people do it all the time. The element in § 2244(b) requiring that the sexual contact be "without [the] other person's permission" is the actual linchpin of the offense. Therefore, if § 2244(b) requires a guilty mind, then the mens rea requirement must apply to the lack-of-permission element. The requirement that the defendant knew that he was engaging in sexual contact per se does nothing to separate innocent from criminal behavior.

Nor does the requirement that the government prove that the sexual contact was *objectively* without the other person's permission obviate the need for a second mens rea requirement. *See* Lead Op. 12–13. Again, the element requiring that the sexual contact be "without [the] other person's permission" is what makes the sexual contact illegal under the statute. This means that "the presumption in favor of a scienter requirement should apply" to the permission element of § 2244(b) because that is the element "criminaliz[ing] otherwise innocent conduct." *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72–73 (1994) (holding that because "the age of the performers is the crucial element separating legal innocence from wrongful conduct" under a child-pornography statute, the statute requires that the defendant have knowledge of the performer's age).

I acknowledge that the lead opinion cites cases in which this court has held that *Flores-Figueroa*'s reading of "knowingly" does not compel the same reading in every criminal statute that uses the word "knowingly." Lead Op. 13–14. Although the lead opinion is correct in stating that "the inquiry into a sentence's meaning is a contextual one," *Flores-Figueroa*, 556 U.S. at 652, the cases it cites are distinguishable from the present case.

In *United States v. Jefferson*, 791 F.3d 1013, 1016–18 (9th Cir. 2015), for example, this court determined that *Flores-Figueroa* did not apply because the text of the statute before it, 21 U.S.C. § 960(a), was not parallel to the statute at issue in *Flores-Figueroa*. The *Jefferson* court held that the "knowingly" mens rea requirement did not apply to an element that was contained in a different sentence—indeed, in an *entirely separate subsection*. *Id.* at 1015; *see also United States v. Stone*, 706 F.3d 1145, 1147 (9th Cir. 2013)

(holding that 18 U.S.C. § 924(a)(2)'s mens rea requirement for possessing ammunition did not apply to 18 U.S.C. § 922(g)'s requirement that the ammunition travel in interstate commerce); *United States v. Castagana*, 604 F.3d 1160, 1166 (9th Cir. 2010) (declining to apply *Flores-Figueroa* to 18 U.S.C. § 1038(a)(1), but addressing a specific mens rea requirement that formed its own self-contained phrase).  Accordingly, the cases cited by the lead opinion do not concern statutes that resemble the statute here, where the word "knowingly" is at the beginning of a phrase defining all the elements of the offense.

The lead opinion also cites *United States v. Backman*, 817 F.3d 662 (9th Cir. 2016), which dealt with a sex-trafficking statute requiring proof that the "[d]efendant 'knowingly—(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person.'" *Id*. at 666–67 (quoting 18 U.S.C. § 1591(a)).  This court held that the government need not prove, in addition to proving knowing recruitment, that the defendant knew that his acts affected interstate or foreign commerce.  It reasoned that "[t]he phrase 'in or affecting interstate or foreign commerce' describes the nature or extent of those actions but, grammatically, does not tie to 'knowingly.'" *Id.* at 667.

*Backman*, however, is no more persuasive on the issue before us than is *Jefferson*, *Stone*, or *Castagna*.  The *Backman* court addressed a jurisdictional element, an element that turns what would otherwise be a state crime into a federal crime because of its nexus to some aspect of federal jurisdiction.  *Id.*  That decision rested in large part on "[t]he longstanding presumption . . . that the jurisdictional element of a criminal statute has no mens rea," and thus has no

relevance to our analysis in this case of a substantive, rather than jurisdictional, element.  *Id.*   The structure of the sentence at issue in *Backman* is also markedly different from the one before us.  That statute's jurisdictional element ("in or affecting interstate or foreign commerce") comes between "knowingly" and the verbs that they both modify, and the element is set off from both by a dash and a comma.  Section 2244(b)'s structure is very different:  even if "without that other person's permission" were read to modify "engages," it follows the verb and is not set off in any way.

In sum, I find the lead opinion unpersuasive in arguing that the most natural grammatical reading of § 2244(b) does not require the government to prove that the defendant subjectively knew that he lacked permission to engage in sexual contact.  The text, in tandem with Supreme Court precedent, strongly suggests otherwise.

**B.**

In addition to its text, § 2244(b)'s statutory scheme strongly indicates that the "knowingly" mens rea requirement applies to the lack-of-permission element of the crime.  Section 2244 was adopted as part of the Sexual Abuse Act of 1986, Pub. L. No. 99-646, § 87(b), 100 Stat. 3592, 3620–23.  Several other provisions were also adopted as part of this same Act, including § 2242 (the statute at issue in *Bruguier*), § 2241, and § 2243.  Each of these sections addresses forms of sexual assault within certain extended federal jurisdictions.

Most important to our analysis in this case are § 2241(c) and § 2243(a), which deal with sexual acts that are criminal due to the other person's age.  Section 2241(c) applies to anyone who, in certain extended federal jurisdictions, "knowingly engages in a sexual act with another person who

has not attained the age of 12 years," while § 2243(a) applies to anyone who, in certain extended federal jurisdictions, "knowingly engages in a sexual act with another person who—(1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging."

As the Eighth Circuit explained in exhaustive detail when comparing § 2242(2) to § 2241(c) and § 2243(a), the structure of the three provisions is very similar:  each bars knowingly engaging in a sexual act when certain circumstances are also present.  Section 2244(b), the statute in question here, follows the same structure as the other three sections, although it addresses sexual contact rather than sexual acts.  *See United States v. Bruguier*, 735 F.3d 754, 759 (8th Cir. 2013) (en banc) (charting the parallel structure of §§ 2241(c), 2242(2), and 2243(a)).  Section 2244(a)(1)–(5) provides for criminal penalties for "knowingly engag[ing] in or caus[ing] sexual contact with or by another person" when doing so would violate various provisions of §§ 2241–43 "had the sexual contact been a sexual act," further confirming the close relationship between § 2244 and the other three sections.  "The interrelationship and close proximity of these provisions of the statute presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Comm'r v. Lundy*, 516 U.S. 235, 250 (1996) (internal quotation marks omitted).

Sections 2241 and 2243, the two sections addressing sexual contact with minors, include provisions that expressly limit their mens rea requirements.  Section 2241(d) provides that "the Government need not prove that the defendant knew that the other person engaging in the sexual act had not

attained the age of 12 years," while § 2243(d) states that "the Government need not prove that the defendant knew—(1) the age of the other person engaging in the sexual act; or (2) that the requisite age difference existed between the persons so engaging." Neither § 2242(2) nor § 2244(b) contains an analogous provision relieving the government of its burden to prove that the defendant knew of the circumstances that make the sexual contact a crime—in § 2242(2), the other person's incapacity; in § 2244(b), the lack of permission.

Commenting on the lack of any provision analogous to § 2241(d) and § 2243(d) in § 2242(2), the Eighth Circuit invoked the "general rule of statutory construction that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Bruguier*, 735 F.3d at 759–60 (quoting *Rodriguez v. United States*, 480 U.S. 522, 525 (1987)). Thus, the court explained, "reading section 2242(2) in the broader context of the Act, and applying *Rodriguez*'s presumption that 'disparate inclusion or exclusion' of statutory language is intentional, . . . reinforces the conclusion that 'knowingly' in section 2242(2) applies to the victim-incapacity element of the offense." *Id.* at 760. The court went on to say:

> Moreover, interpreting the knowledge requirement in section 2242(2) to extend only to knowledge of the sexual act would raise interpretive concerns with sections 2241 and 2243. . . . If section 2242(2)'s knowledge requirement were construed to apply only to knowledge of the sexual act, then this same construction logically should apply to the knowledge requirement in sections 2241(c)

and 2243(a). Doing so, however, would
render superfluous sections 2241(d) and
2243(d), both of which explicitly narrow the
respective statutes' knowledge requirements.
This would run afoul of "the cardinal
principle of statutory construction that it is
our duty to give effect, if possible, to every
clause and word of a statute."

*Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 173 (1997)).

I agree with the Eighth Circuit's analysis, which applies
equally to § 2244(b). The overall structure of these
interrelated statutes reflects Congress's understanding that,
unless expressly limited, the "knowingly" mens rea
requirements would apply to all the elements of the offense
and not to only the sexual act itself, or else Congress would
not have included limits on the mens rea requirement in
§ 2241(d) and § 2243(d). This understanding is apparent not
only from the text, but is also expressly stated in the
legislative history. In explaining why § 2241(d) was
included in the statute, for example, the House Report states
that "[a]bsent this provision, the government would have had
to prove that the defendant knew that a victim was less than
12 years old, since the state of mind required for the
conduct—knowing—is also required for the circumstance of
the victim's age." H.R. Rep. No. 99-594, at 15 n.59 (1986).

"It is inconceivable that Congress meant to create a strict
liability crime *by omission* in one section of a statute when
Congress affirmatively created strict liability crimes *by
inclusion* in [two other] sections of the same statute."
*Bruguier*, 735 F.3d at 766–67 (Riley, C.J., concurring)
(emphases in original); *see also* H.R. Rep. No. 99-594,
at 15–18 (discussing and justifying the inclusion of the

strict-liability age elements); *id.* at 19 (discussing § 2244(b) with no reference to any strict-liability element). Taken together, therefore, the *Flores-Figueroa* presumption and the statutory context clearly establish that the government must prove that the defendant knew that the sexual contact was without the other person's permission in order to obtain a conviction under 18 U.S.C. § 2244(b).

The lead opinion's only response to the comparison among § 2244(b), § 2241(c), and § 2243(a) is that § 2241 and § 2243 impose more severe penalties than § 2244 and, therefore, § 2241 and § 2243 require an explicit statement that the government need not prove that the defendant knew the age of the victim in order to overcome the strong presumption of such a mens rea requirement. Section 2244(b), the lead opinion argues, does not give rise to the same strong presumption because of its less severe penalties. Lead Op. 17–18. The lead opinion also distinguished the Eighth Circuit's decision in *Bruguier* on those grounds because § 2242(2), the statute at issue in *Bruguier*, "has a severe maximum penalty of life imprisonment, unlike § 2244(b)." Lead Op. 18 n.3.

But the lead opinion suggests that the presumption that "some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime," *Staples v. United States*, 511 U.S. 600, 606 (1994), applies only when the penalty is severe. *Staples*, however, did not hold that the presumption applies *only* to crimes with high penalties. *See id.* at 617–18. If that were the rule, then courts would have to determine what constitutes a "high penalty" versus a "low penalty" in all these type of cases. Surely a defendant charged with a violation of § 2244(b), which carries a penalty of up to two years of imprisonment, would argue that a two-year term of imprisonment is a very

high penalty for an offense where, according to the lead opinion, there is no mens rea required for the element of the offense that turns otherwise legal conduct into a crime.

The lead opinion also attempts to use the difference in penalties to suggest that requiring the government to prove that a defendant knew that he lacked permission to engage in sexual contact under § 2244(b) would produce an absurd result.  Lead Op. 19.  It notes that § 2244(c), which provides that "[i]f the sexual contact that violates this section . . . is with an individual who has not attained the age of 12 years, the maximum term of imprisonment that may be imposed for the offense shall be twice that otherwise provided in this section," does not contain any explicit provision disposing of a mens rea requirement regarding the victim's age.  The lead opinion therefore argues that, under my reading of the statute, the government must prove that the defendant knew that the child was under 12 years old in order to obtain a § 2244(c) conviction.  Because § 2244(c) has less severe penalties than § 2241(c) and § 2243(a), and because the latter two statutes explicitly eliminate a mens rea requirement regarding the victim's age, the lead opinion argues that Congress could not have intended to impose the extra mens rea requirement on defendants charged with violations of the less serious penalties under § 2244(c).  Lead Op. 19.

But the less severe penalties of § 2244(c) are explainable regardless of its mens rea requirement.  This is because § 2244 criminalizes certain sexual *contact*, whereas § 2241 and § 2243 criminalize certain sexual *acts*.  "Sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person."  18 U.S.C. § 2246(3).  A "sexual

act," in contrast, is significantly more intrusive, encompassing:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

*Id.* § 2246(2). The difference in penalties between § 2244(c), § 2241(c), and § 2243(a) is therefore warranted, and requiring the government to prove the defendant's knowledge of the victim's age for a conviction under § 2244(c) but not under the other two statutes would not produce an absurd result.

Finally, the lead opinion compares § 2244(a) and § 2244(b) in an attempt to demonstrate that the statutory scheme supports its conclusion. Both § 2244(a) and § 2244(b) require that the defendant "knowingly" have "sexual contact" plus one additional element. In § 2244(a), the additional element that the government must prove is that the sexual contact would be punishable by another delineated statute if the sexual contact had instead been a sexual act; in § 2244(b)—the statute under which Price was convicted—the additional element is a lack of permission. The lead opinion argues that because the government is not required to prove that the defendant knew that the second element of § 2244(a)—that the sexual contact he engaged in would have been punished by another law if the contact was a sexual act—was met, the government is also not required to prove that the defendant knew that the second element of § 2244(b)—a lack of permission—was met. Lead Op. 15–17.

But that argument overlooks the longstanding distinction between knowledge of the underlying criminal law and knowledge of the facts that constitute the offense. Courts almost never interpret criminal statutes to require knowledge of applicable criminal law. *See, e.g.*, *Cheek v. United States*, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system."). On the other hand, as highlighted several times throughout this concurring opinion, courts presumptively *do* interpret criminal statutes to require knowledge of the facts that constitute the offense. *See, e.g.*, *Staples v. United States*, 511 U.S. 600, 618–19 (1994) ("[W]here . . . dispensing with mens rea would require the defendant to have knowledge only of traditionally lawful conduct, . . . the usual presumption that a defendant must know the facts that make

his conduct illegal should apply."). I therefore find the lead opinion's comparison of § 2244(a) and § 2244(b) unpersuasive, and conclude that the statutory scheme at hand requires that the "knowingly" mens rea requirement of § 2244(b) be applied to the lack-of-permission element of the crime.

## C.

In further support of its argument, the lead opinion highlights two statements from the House Report on the Sexual Abuse Act of 1986 bill. First, the lead opinion says that Congress expected that the Act would "simplify law enforcement activities." Lead Op. 20 (quoting H.R. Rep. No. 99-594, at 21 (1986)). But that statement has been taken out of context. The House Report does not indicate that Congress sought to achieve the goal of "simplifying law enforcement activities" by eliminating mens rea requirements from certain subsections of the statute. Instead, the Report says that the Act "may simplify law enforcement activities" by "provid[ing] much more specific definitions of federal sexual abuse offenses . . . [and] mak[ing] conforming amendments to a number of other statutes that currently refer to rape." H.R. Rep. No. 99-594, at 21. The Report says nothing about the mens rea issue in question here.

The second statement from the House Report that the lead opinion relies on provides that "[w]here the Committee believes it appropriate to the offense to require the prosecution to show that the conduct was engaged in without the victim's permission, such a requirement has explicitly been set forth." Lead Op. 20 (quoting H.R. Rep. No. 99-594, at 13). But that statement says nothing about *the defendant's knowledge* "that the conduct was engaged in without the victim's permission." *See* H.R. Rep. No. 99-594, at 13. And

only two paragraphs later, the Report explains that proposed § 2243(d) "sets forth a proof requirement concerning the defendant's state of mind [because t]he Committee does not . . . believe a corroboration requirement is justified and has, therefore, intentionally not imposed such a requirement." *Id.* at 14. The Report, in contrast, says nothing about "a proof requirement concerning the defendant's state of mind" for § 2244(b). In fact, nothing in the hearings or reports on the Act suggests that any of the participants in its passage had any intention of making 18 U.S.C. § 2244(b) a strict-liability offense.

Other parts of the legislative history actively undermine the lead opinion's interpretation of the statute. The House Report, for example, explains that "[the Sexual Abuse Act of 1986 was] drafted employing the format, conventions and techniques used in drafting the Criminal Code Revision Act of 1980." *Id.* at 13 (citing H.R. Rep. No. 96-1396 (1980)). One such convention was that, "[t]he state of mind required for conduct will apply to circumstances and results unless otherwise specified. This rule makes it unnecessary to distinguish among the components of an offense (conduct, circumstances and results) in order to determine the applicable state of mind." H.R. Rep. No. 96-1396, at 34. The lead opinion's argument that "knowingly" applies only to the element of sexual contact, but not to the element of lack of permission, is contrary to this understanding that mens rea would apply equally to every element of the offense.

Rather than confronting the stark difference between the provisions adopted as part of the same Act, the lead opinion instead attributes a broad intention to Congress's goal of modernizing sexual assault laws "to focus on the defendant's conduct" rather than the victim's state of mind. Lead Op. 4.

But the goal of focusing on the defendant's conduct rather than the victim's state of mind does not support the lead opinion's position. Price asks us to hold that the government must prove that he knew he was engaging in sexual contact without A.M.'s permission. Reading the statute to include that requirement advances the goal that the government attributes to Congress: it focuses on the defendant's conduct rather than the victim's state of mind. Requiring the government to prove something about *Price*'s state of mind at the time of his offensive conduct does nothing to implicate the *victim*'s state of mind.

As a final thought on this issue, I address the lead opinion's contention that "[i]f the government were required to prove that the defendant subjectively knew he lacked consent, as Price urges here, every accused sexual predator could defend his admitted sexual contact in the face of no objective sign of permission by asserting a supposed subjective belief that the victim was 'enjoying herself.'" Lead Op. 4. The government made a similar statement at oral argument, contending that a knowledge requirement would allow defendants to avoid conviction under this statute simply by "get[ting] up on the stand and say[ing], 'Oh, I didn't know.'" But the defendant's subjective knowledge is and always has been an extremely common requirement in criminal statutes, one that the government is almost always required to prove. It typically does this by circumstantial evidence and by asking the jury to reject what the government views as self-serving and incredible claims of innocence. The criminal system has hardly ground to a halt as a result.

In sum, under the interpretive rule recognized in *Flores-Figueroa*, the plain text of 18 U.S.C. § 2244(b) applies the "knowingly" requirement to each element of the offense,

including that the sexual contact be without the other person's permission.  That interpretation is not rebutted by any special context; in fact, the context of the Sexual Abuse Act of 1986 strongly reaffirms the conclusion that "knowingly" applies to every element.  I would therefore hold that the "knowingly" requirement applies to the element of the sexual contact being without the other person's permission.  Section 2244(b)'s language and the context provided by the other related provisions compel this result. The legislative history and the weighty presumption against strict-liability offenses further support my conclusion.

## II.

Despite my disagreement with the lead opinion's analysis of 18 U.S.C. § 2244(b), I join its ultimate conclusion for a totally different reason—that the district court's error in relieving the government of its need to prove that Price subjectively knew he lacked A.M.'s permission to engage in sexual contact with her was harmless.  "An error in criminal jury instructions requires reversal unless there is no reasonable possibility that the error materially affected the verdict or, in other words, that the error was harmless beyond a reasonable doubt."  *United States v. Pierre*, 254 F.3d 872, 877 (9th Cir. 2001) (internal quotation marks and brackets omitted).  In the district court's instructions to the jury, it defined "permission" as "[t]he act of permitting, a license or liberty to do something, or authorization," explaining that permission can be express or implied, and explaining that implied permission "means permission that is inferred from words or actions."

Price conceded that A.M. never gave him *explicit* permission to touch her breasts or vagina.  The only remaining question is whether there is any reasonable possibility that the jury could have found that Price

subjectively believed he had A.M.'s *implicit* permission to engage in sexual contact with her.  In light of the strong circumstantial evidence showing that Price had to have known that A.M. had not consented to his advances, the answer is no.

By convicting Price, the jury determined that he in fact lacked both explicit and implicit permission to touch A.M.'s breasts and vagina.  The jury therefore believed A.M.'s story of what occurred on the flight over Price's story.   And according to that story, A.M. was asleep when Price began running his hand up and down her side and her leg.   A sleeping person clearly gives no implicit permission to be touched.   A.M. then moved her cell phone, thinking that Price might have been trying to steal it, and fell back asleep. She woke up once again when he began touching her breast. In response, A.M. put a blanket over her shoulder and crossed her arms in front of her.

These actions, if anything, negate any implicit permission to be touched.   Yet Price continued to touch A.M.'s breast and then moved his hand down to her legs, first over her jeans and finally inside of them, touching her vagina.   In a state of shock, panic, and fear, and in a final effort to ward off Price, she turned her body away from him and towards her friend Fujita.   Despite A.M.'s negative reaction to Price's advances, she testified that he "tried to move my body towards" him "[w]ith strong force" and tried to pull her jeans down.   A.M., moreover, never spoke to Price while he was touching her nor even looked at him during their encounter.   Under all of these circumstances, no reasonable juror could have found that Price subjectively believed that he had permission to touch A.M., especially once A.M. physically turned her back to him and towards her friend.

Price's statements after the incident further support a finding that he knew he lacked permission to touch A.M. He said that he "knew . . . it was wrong" to be "engaging like this with somebody who is totally a stranger" without first having had a "proper conversation." Price also agreed with Special Agent Gates, the FBI agent who interviewed Price, that, at his age, he should have known that it was his "job not to touch" A.M. without her permission. And finally, when the customs officers searched Price's bags, they found a note that read: "If a man touches you and you don't want him to always feel free to say no." Price said that he wrote the note to A.M. after she got up and left her seat, indicating that he knew A.M. had not given him permission to touch her.

I would therefore hold that the error in the district court's jury instructions was harmless because "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *See United States v. Anchrum*, 590 F.3d 795, 801 (9th Cir. 2009) (internal quotation marks omitted). The government's evidence, which the jury had to believe in order to find Price guilty, overwhelmingly demonstrated that Price knew that he lacked permission to engage in sexual contact with A.M. *See United States v. Cherer*, 513 F.3d 1150, 1155 (9th Cir. 2008) (holding that an erroneous jury instruction regarding mens rea was harmless when "the government's evidence overwhelmingly show[ed] that [the defendant] believed [the victim] was fourteen years old").

For all of the foregoing reasons, I concur with the lead opinion's conclusion that Price's conviction should be affirmed.